HICKEY *v.* ANDERSON, et al.

Division B. Jan. 8, 1951.

No. 37761 (49 So. (2d) 713)

H. T. Carter and Guyton & Allen, for appellant.

Robin Weaver and John T. Frierson, for appellee.

Ethridge, C.

Appellant undertakes to set aside a deed executed by an elderly lady to the three appellees, with whom she was living, and one of whom is her niece, on the grounds of fraud and undue influence in the procurement resulting from a fiduciary relationship between the grantor and the appellees. There is also involved a question of the admissibility of certain testimony and evidence excluded by the trial court.

Mrs. Rosa Ann Burns, in 1943, had been living in Columbus, Mississippi, for many years. She was about

77 years of age. Her husband had died a number of years before and had left her several pieces of property in and around Columbus, including the house and lot here in question, which was her home. Her next of kin were a niece, Mrs. Mamie Ida Drake, who inherited one-half of her estate, and two nephews, William L. Hickey and Stockard L. Hickey, who each inherited a one-fourth part of her estate. Mrs. Drake had a daughter, Mary Louise Anderson, whose husband was Emerson T. Anderson. These three latter parties were defendants in the court below and are appellees here.

In October, 1943, Anderson's brother died, and Mrs. Burns, in preparing to go to the funeral, fell in the bathroom of her home. She was considerably injured and shaken up from the fall, and Anderson took her to the home occupied by himself, his wife, and Mrs. Drake, to recuperate. Mrs. Burns' knees swelled quite a bit, and as a result of that and other injuries she was confined to bed in the Anderson home for about a year. She was in more or less of a helpless condition during this period, she could walk only with assistance from others, and the Andersons and Mrs. Drake took care of her. Anderson carried her back and forth to the hospital for treatments, as a result of which she was considerably improved and was able to walk about again. During the two and one-third years Mrs. Burns stayed in the Andersons' home, she rented her own home to others. Late in 1945 Mrs. Burns told Anderson, according to his testimony, that she wanted to move back to her own home, and that she wanted the Andersons to sell their place, and, with Mrs. Drake, to come and live with her. She told them that if they would live with her, she would deed her home to Mrs. Drake and the Andersons, retaining a life estate in herself. Mrs. Burns had previously executed a will in which she had devised her home to Mrs. Drake and her daughter, Mary Louise Anderson, but this will was not properly attested and therefore was not probated upon her death. By the execution of the deed sub-

sequently referred to, she included Mr. Anderson as one of her successors in title to her home, along with Mrs. Drake and her daughter. At any rate, in December, 1945, the Andersons sold their home.

Mr. Anderson testified, as an adverse witness for the complainant, that Mrs. Burns instructed him to go to her lawyer, J. W. Loving, and to request him to prepare a deed of her home from her to Mrs. Drake and Mr. and Mrs. Anderson, reserving in Mrs. Burns a life estate. Anderson suggested an attorney who had done some work for him, but he testified that Mrs. Burns insisted on the attorney who had always looked after her own business. Anderson went alone to Loving's office, gave him the facts, and later returned and obtained the deed which Loving had drafted. He then carried it to his home, where they were still living, and gave it to Mrs. Burns, who requested Anderson to call a notary public so that she could execute the deed. Anderson testified that he was absent when the notary public arrived and the deed was executed. It was executed on January 3, 1946, and on the next day Anderson took it to the Chancery Clerk's office and filed it for recordation. Neither Anderson nor Loving recalled who paid the attorney's fee for drafting the deed. In the deed, Mrs. Burns conveyed to Emerson T. Anderson, and his wife, Mrs. Mary Louise Anderson, and Mrs. Mamie Ida Drake her home, reserving a life estate therein to herself. It stated that the consideration was the payment of $10 to the grantor, and "other good and valuable consideration to be had and received from the said parties of the second part in the way and manner of the said parties of the second part, looking after, caring for, supporting, maintaining, and attending to the said party, in good, decent, respectable, and efficient manner . . ."

In February, 1946, Mrs. Drake and the Andersons moved with Mrs. Burns to her old home, where they continued to live with her until her death on December 22, 1948. On June 20, 1949, William L. Hickey, a nephew

and one of the heirs of Mrs. Burns, filed this action in the Chancery Court of Lowndes County against the Andersons and Mrs. Drake. The bill of complaint charged that the defendants induced Mrs. Burns to leave her home and live with them at a time when she was ill; that through duress, undue influence, and unfair pressure upon Mrs. Burns, they induced her to execute the deed of January 3, 1946; that the defendants occupied a fiduciary relationship to Mrs. Burns at the time of the execution of the deed, that she was old and weak in mind and body at that time, and was incapable of resisting such undue influence and duress, and that in violation of this fiduciary relationship the defendants wrongfully obtained said deed. The bill further charged that the defendants did not furnish the consideration agreed upon in the deed, and did not support Mrs. Burns, but in fact she used her own money for that purpose, and that the defendants took the money of Mrs. Burns and used it for their own support and otherwise dissipated it for their own purposes, and that all of these acts constituted fraud in the procurement of the deed. The charge of fraud in the bill, although not as strong and clear as it should have been, was adequate. The bill charged, in brief, the existence of a fiduciary relationship between the defendants and Mrs. Burns, the exercise of undue influence and fraud upon her, and the use of duress upon her in obtaining the deed. All of the heirs of Mrs. Burns, other than the complainant, were made defendants, and the bill asked for a cancellation of the deed and for a partition of the property by sale.

The answer of defendants denied the basic charges in the complaint, and alleged fulfillment of the consideration in the deed by defendants. It denied that there was any fiduciary relationship between defendants and Mrs. Burns, and averred that she was well able to handle her own business. By amendment, the defendants further pleaded that since the date of the deed they had made repairs and improvements on the property of the

value of not less than $1,000, and alleged that one consideration for the deed was the affection which Mrs. Burns had for the defendants, and further, that because of the delay in filing this suit the complainant was estopped by laches to attempt to set the deed aside. Subsequent to the filing of the suit, William L. Hickey, the original complainant, died, and the suit was revived in the name of his wife, Mrs. Ira L. Hickey, administratrix of his estate.

The case was tried at the October, 1949, term of court, at which the complainant used seven witnesses to support its allegations, including as an adverse witness Emerson T. Anderson, one of the defendants. The defendants introduced no witnesses and moved to exclude the evidence and dismiss the bill on the ground that the testimony failed to support the allegations of the bill and to constitute a cause of action. The trial court's final decree sustained this motion and dismissed the bill as to all of the defendants. In its opinion, the court found as a fact that "there is no evidence in this record that proves or either tends to prove that these people perpetrated a fraud upon the mind and heart and conscience of Mrs. Burns in order to get what little of this world's goods she had . . . there are no facts presented to this court to prove that they were guilty of a fraud." In brief, the chancellor found as a fact that the complainants failed to show by their testimony fraud, undue influence, duress, mental incapacity of Mrs. Burns, and the existence of a fiduciary relationship between her and the defendants.

We are of the opinion that the trial court erred in sustaining appellees' motion to exclude the evidence and dismiss the bill. Appellant's evidence made out a prima facie case, sufficient for that purpose on the issues of fiduciary relationship and undue influence exercised in the execution of the deed, to place upon the appellees the duty of going forward with the evidence to rebut that case. ▪▪ ▪ Fraud and undue influence, which is

a type of fraud, are usually evidenced only by circumstantial facts, and a wide range of inquiry thereon is permitted. Woodville v. Pizzati, 1919, 119 Miss. 442, 81 So. 127; Curry v. Lucas, 181 Miss. 720, 180 So. 397.

 The motion to exclude and dismiss requires us to accept as true matters shown by appellant's evidence having a believable basis. On a motion to exclude "the court should assume as true all facts which the complainant's evidence fairly tended to establish together with all reasonable inferences to be deduced therefrom . . ." Griffith, Miss. Chancery Practice, Section 584. The present state of the record indicates, with the foregoing principle in mind, that for several years prior to her death, Mrs. Burns was an invalid, and that the appellees waited on her, ran errands for her, assisted her physically in getting about, and otherwise treated her as an invalid. In a physical and business way, she was more or less dependent upon appellees. She was old and infirm, with a poor memory, and was dependent upon appellees to pay her taxes, deposit checks for her, and assist her in the management of her affairs. Mrs. Burns had no advice, independent of appellees', concerning the execution of the deed. She seldom saw or talked to anyone other than appellees. Anderson alone talked to the attorney who prepared the deed, and Anderson promptly recorded it after its execution. These are some of the items of evidence which were sufficient to create a prima facie case on the issues of the existence of a fiduciary relationship between appellees and Mrs. Burns, and the presumption of undue influence or fraud resulting therefrom. It is well-established in Mississippi and elsewhere that where a confidential relationship is shown to exist between parties to the deed, and where the grantee, who is the beneficiary, is the dominant spirit in the transaction, the law raises a presumption of undue influence, or, as is sometimes said, a deed is prima facie voidable in such cases. Under such circumstances the burden or duty of repelling or rebutting such a pre-

463

sumption is cast upon the grantee. 16 Am. Jur., Deeds, Sections 392-395, 402; 26 C. J. S., Deeds, Sections 193, 58; Watkins v. Martin, 1933, 167 Miss. 343, 147 So. 652; Lindeman's Estate v. Herbert, 1940, 188 Miss. 842, 193 So. 790; Ham v. Ham, 1926, 146 Miss. 161, 110 So. 583; Bourn v. Bourn, 1932, 163 Miss. 71, 140 So. 518; Griffith, Miss. Chancery Practice (2d ed. 1950), Section 589.

 Under these circumstances the trial court should have required appellees to put on their proof, and should have decided the case in the light of all available evidence. Equity favors "the fullest available development of the facts of a contested case". Griffith, Ibid., Section 584. We of course express no opinion as to the merits of the suit upon final and full hearing. We hold that, on the motion to exclude and dismiss, appellant's testimony and evidence at least made out a prima facie case which appellees were obligated to rebut.

Appellant also assigns as error the exclusion by the trial court of certain testimony and documentary evidence offered by the appellant. Mrs. Ira. L. Hickey and George Hickey both testified that Mrs. Drake, one of the grantees in the deed in question, told them at separate times, at a time reasonably proximate to the date of the deed, that Mrs. Burns' mind was very bad, and that she was a "little bit off". This testimony was excluded as being hearsay. We think it was admissible, for whatever it might be worth, as a party opponents' admission, as a statement by one of the appellees which is inconsistent with her present claim that Mrs. Burns was mentally active and alert at the time of the deed, and thus tending to throw doubt upon that position. An admission is not limited to facts against the party opponents' interest at the time of making it. The requirement is that it must exhibit an inconsistency with his or her present claim. 4 Wigmore, Evidence (1940 ed.) page 4. Nor does the opinion rule limit the use of a party's admissions. Wigmore, Ibid., page 15. And the admissions of joint tort-feasors and those who

are privy in estate are admissible against those having a similar position. 4 Wigmore, Ibid., pages 134-139.

The trial court also erred in excluding testimony by Mrs. Ira L. Hickey and George Hickey as to their opinion of Mrs. Burns' mental condition, on the ground that the witnesses had not properly stated the facts upon which they based their opinions. ██ ██ Both of the witnesses had known Mrs. Burns for many years, and had some basis for formulating a layman's opinion. Although a lay witness must first state some of the factual basis of his opinion, Ward v. Ward, 1921, 124 Miss. 697, 87 So. 153, the main requirement is that he must actually have had an opportunity to observe the person and must have some knowledge on which to formulate an opinion. In Wood v. State, 1881, 58 Miss. 741 it was pointed out that the major requirement is observation and acquaintance to support the opinion. Judge Chalmers said that ██ ██ "How much weight is to be given to the opinion of a witness on the question of insanity depends, like the weight to be given to all other opinions, upon the intelligence of the witness and his opportunities of observation . . . ." We do not now pass upon the statutory competency, under Code of 1942, Section 1690, of Mrs. Hickey or any of the other witnesses herein, since that is not assigned as error or briefed herein.

██ ██ The trial court also should have permitted the appellant to develop the facts with reference to Mrs. Burns' bank accounts before and after she began living with the appellees. Appellant stated that he proposed to show that although the account was inactive before she moved in with appellees, it became very active thereafter and large sums of money were withdrawn. If this is a fact, it would be relevant circumstantial evidence on the issue of confidential relationship, undue influence, and fraud by appellees. Accordingly, the testimony and records of the two representatives of the Columbus banks was admissible. The same observation is applicable to the questions put to Anderson concerning his knowledge

of the checks drawn by Mrs. Burns on her bank accounts, whether any of them were payable to Anderson or the other appellees, and whether he paid taxes and deposited pension warrants for her. Further, the evidence as to whether appellees supported Mrs. Burns would not be admissible to show failure of consideration, Lee v. Mc-Morries, 1914, 107 Miss. 889, 66 So. 278, L. R. A. 1915B, 1069, but it would be relevant on the issues of undue influence and fraud, subject to reasonable limitations upon the scope of the proof thereon. All of this might or might not be material on the issues, depending upon what the proof showed.

The decree below is therefore reversed and the cause remanded for a full hearing on the merits.

Reversed and remanded.